Filed 8/21/24  P. v. Addiego CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MATTHEW ADDIEGO,<br><br>    Defendant and Appellant. | C099598<br><br>(Super. Ct. No. 62187245) |

After a jury found defendant Matthew Addiego guilty of transporting a controlled substance for sale and related crimes, the trial court placed him on formal probation for two years.  On appeal, Addiego raises four claims of misconduct by the prosecutor.  Three of those claims are forfeited on appeal, and the fourth lacks merit.  Accordingly, we affirm.

BACKGROUND

I

*Prosecution's Case*

One morning in September 2022, a Placer County Sheriff's deputy noticed an expired registration sticker on the rear license plate of the gold Mercedes that Addiego

1

was driving.  The deputy initiated a traffic stop and the interaction between the two men was captured by the deputy's in-car camera and lapel microphone.

The deputy asked Addiego if he used drugs and if there was anything illegal in the car.  Addiego said no and begged the deputy not to search and tow his car.  Unmoved, the deputy searched the car and found a number of items including clear Ziplock baggies containing a white crystal-like substance, which he suspected was methamphetamine (meth), a used meth smoking pipe, a scale with a white substance on it, and a $20 bill. Addiego placed his cell phone on the dashboard of the car when the deputy asked him to step out of the car.  No gun was found.

A.      *Cell Phone and "Pay/Owe" Ledgers*

The deputy seized Addiego's phone.  As for what happened next, the following exchange occurred at trial:

"[THE PROSECUTOR]:  And did you ask the defendant for consent to look in the phone to see if there is any messages that might be indicative of illegal activities?

"[DEFENSE COUNSEL]:  Objection, Your Honor, here. . . .  Relevance.

"THE COURT:·  Objection sustained.

"[THE PROSECUTOR]:  Eventually, later on, did you author a search warrant to search the cell phone?

"[THE DEPUTY]:  Yes, I did."

On cross-examination, the following exchange occurred between defense counsel and the deputy:

"[DEFENSE COUNSEL]:  Now, you recovered a cell phone; is that right?

"[THE DEPUTY]:  Correct.

"[DEFENSE COUNSEL]:  And, sir, you authored, you helped prepare a search warrant to look at the contents of the cell phone; is that right?

"[THE DEPUTY]:  That is correct.

2

"[DEFENSE COUNSEL]: And, sir, you didn't find any text messages in the cell phone, did you?

"[THE DEPUTY]: The data from the cell phone was unable to be extracted."

Defense counsel also asked the deputy about "pay/owe sheets" and "ledgers," which the deputy agreed are used by dealers to record the date of drug sales and how much money the buyer owes to the dealer. Defense counsel asked the deputy if he found any pay/owe sheets or ledgers in the car. The deputy said he did not find either and emphasized that was the reason he confiscated the cell phone.

A digital forensics detective testified that while he had successfully extracted data from over 400 cell phones ("normal android phones, iPhones mainly") over the course of nearly six years in the Placer County Sheriff's Department, he was unable to extract any data from Addiego's cell phone, which was a phone brand he had never seen before that did not appear to be supported by the tools he normally used on cross-examination. The detective said he spent about two hours trying to extract data from the phone and did not seek help from anyone else in the Placer County Sheriff's Department or any outside organizations, including the FBI. On redirect, the detective explained that he did not seek outside help because he used the same tools and had the same training as anyone doing digital forensics at the FBI.

Also on redirect, and over defense counsel's speculation objection, the prosecutor posed the following counterfactual to the detective: "Had you been provided with a PIN code to unlock the phone, would that have changed your ability to download the data?" "Yes," the detective replied, if he had the PIN, he would have entered it in the phone, opened the phone, and extracted the data with the tools he normally used.

B. *Seized Drugs*

Laboratory tests confirmed a total of about 14 grams of meth in the various plastic bags the deputy found in Addiego's car.

3

A detective in the Auburn Police Department who was assigned to a local narcotics task force testified at trial as an expert on drug use and drug sales. The detective opined that Addiego intended to sell the meth found in his car, which had a street value of about $300. He explained: "You have multiple baggies, you have a scale that shows that the person was weighing his drugs for the purpose of sales. You also have . . . money that's consistent [with] sales." He explained that in his experience drug dealers rarely have physical "pay/owe" sheets at present, because "[e]verything is done digitally with phones."

The detective further explained that some meth users are also low-level dealers, and a heavy user might consume 0.2 grams every six to eight hours. Thus, the detective testified, the roughly 14 grams of meth found in Addiego's car amounted to more than two weeks' worth of meth for a heavy user.

## II

### *Addiego's Case-in-Chief*

A.    *Defense Expert*

A former special agent for the Drug Enforcement Administration testified as an expert witness for Addiego and opined that the meth found in Addiego's car was for personal use. He explained: (1) many drug dealers carry guns to protect themselves and their drugs, including low-level dealers[1]; (2) at least 50 times in his career he recovered scales from drug users, who used the scales (a) to confirm they are getting what they pay for and (b) to determine the amount of a drug necessary to get high while avoiding an overdose; (3) the single $20 bill found inside Addiego's car was not indicative of drug sales, as the low-level dealers he interacted with had, on average, several hundred to a couple thousand dollars of cash in their possession; and (4) many users, "if they . . . come

---

[1] About 90 percent of the drug dealers he arrested in his career had guns.

4

into any money will buy as much as they can," because they can get more drugs at a lower price by buying in bulk.

In response to defense counsel's questions about "pay/owe" sheets and ledgers, the expert witness testified he had seen low-level dealers with "pay/owe" sheets and ledgers, but rarely, because "most of the stuff is on the phone."

Regarding cell phones generally and hypothetically, defense counsel asked his expert witness: "[I]n a case where someone is arrested . . . for drugs and you have a cell phone there, sir, what is your immediate objective with the cell phone?" "First thing I would immediately ask for consent to search the phone," the witness testified. "And then get the pass code, and then we would go to the text section."

Regarding Addiego's cell phone specifically, the following exchange occurred between defense counsel and the defense witness:

"[DEFENSE COUNSEL]: And you know that the cell phone here, that there were no text messages recovered, correct?

"[DEFENSE EXPERT]: Correct.

"[DEFENSE COUNSEL]: And, sir, as a DEA agent have you done forensic cell phone analysis on phones?

"[DEFENSE EXPERT]: Yes, . . . I helped our tech guy do it several times at the DEA. And if for some reason we weren't able to get into it, we would send it down to . . . the FBI [lab] down the street, or if not we could send it to Quantico[, Virginia] because their lab there can break into basically everything.

"[¶]. . . [¶]

"[DEFENSE COUNSEL]: And, sir, that location, you know it also receives phones from jurisdictions from all over the country, correct?

"[DEFENSE EXPERT]: They'll take phones from any local, county, state or federal case."

On cross-examination, the prosecutor questioned the defense expert about cell phone data, and what happens when the owner of a cell phone is unwilling to reveal the passcode that unlocks a phone.

"[THE PROSECUTOR]: [Y]ou described that oftentimes when you would seize a cell phone you would get consent from the person and then be able to go into the phone.

"[DEFENSE EXPERT]: If possible.

"[THE PROSECUTOR]: What do you do when you don't have consent from them?

"[DEFENSE EXPERT]: Then we would have to get a warrant.

"[THE PROSECUTOR]: And once you get a warrant, are you then able to access the phone?

"[DEFENSE EXPERT]: Well, if we had a warrant, then we would have to -- if the cell phone was password protected and the person wasn't willing to cooperate at that point and give the password, then we would have to use different programs that we have to get into them. Or . . . we could ask another federal . . . . [¶] . . . And then if not, then we send it down to Quantico and they have experts [who] have gotten into everything I've sent down there.

"[THE PROSECUTOR]: So having the pass code, that would make it easier.

"[DEFENSE EXPERT]: Yes."

Later, the prosecutor asked, without objection from defense counsel, what the benefit would be for a low-level dealer to consent to a search of a cell phone that contains incriminating information. The defense expert replied: "If there is incriminating evidence on it, then probably I would assume that they wouldn't want us to look at it. That we would just seize it and get a warrant and we would look at it anyway. Because then that would give us additional probable cause to show that there is probably something on it."

On redirect, the expert witness agreed with defense counsel that the Fourth Amendment protects the right to refuse to consent to a search of one's phone by law enforcement.

B. *Addiego's Testimony*

Taking the stand in his own defense, Addiego testified that when the deputy sheriff stopped his car in September 2022, he had been using meth for about one year and was addicted. He used it three to 10 times a day, consuming one to 3.0 grams a day. He used the $20 bill found in his car to ingest meth, and the scale found in his car to "keep [his] use in check." The meth found in his car was exclusively for his personal use because he does not sell it.

On cross-examination, Addiego said the deputy sheriff asked him to unlock his phone. The prosecutor next asked: "He didn't ask you, can I look at your phone to see if there is any messages or anything that would show you're a dealer?" "No, sir," Addiego replied. This exchange followed:

"[THE PROSECUTOR]: Had he asked you to look at the messages, would you have agreed?

"[DEFENSE COUNSEL]: Objection, Your Honor, going into areas here that calls for speculation, also Fourth Amendment rights here. . . .

"THE COURT: He has made a choice to testify today, so it kind of opens the door to lots of things here. So objection is overruled. . . .

"[¶] . . . [¶]

"[THE PROSECUTOR]: If the deputy asked you to look at your phone to see if there's any messages that would indicate sales of methamphetamine, would you have agreed to show him your phone, the messages?

"[ADDIEGO]: No, I don't believe I would."

On redirect, Addiego testified he did not allow the deputy sheriff to search his phone because his phone is private.

## III

### *Prosecution's Rebuttal*

The prosecution's expert on drug use and drug sales testified on rebuttal that it was "very unrealistic" that Addiego would be consuming up to three grams of methamphetamine a day after one year of using. He explained that only a long-time heavy methamphetamine user on a "bender[]" would use three grams in a single day.

## IV

### *Closing Arguments*

In closing argument to the jury, the prosecutor maintained that Addiego's intent was the key area of disagreement. "Is it for sale or personal use?" The answer, he maintained, was that Addiego intended to sell at least some of the drugs. "[M]ake sure that you hold me to my burden, and that is to prove each element beyond a reasonable doubt," the prosecutor said.

Defense counsel argued to the jury that law enforcement could not find any text messages on Addiego's cell phone. Referring to the forensics detective who was unable to extract any data from Addiego's phone, defense counsel argued: "He goes somewhere two hours, looks at it. . . . Two hours, I couldn't get anything out of it, goes to this one place. That's it, I'm done. . . . They just gave up?" Counsel returned to this line of argument later: "All you've got to do is pick up the phone, call FBI, Quantico, we've got an issue here with a phone. Can you help us with that?" "You're law enforcement; you get on it. There are no shortcuts."

Defense counsel then emphasized what was *not* in evidence: "Where is the U.S. currency, multiple denominations? We don't have any. . . . Where are the guns? We don't have any. Where are the ledgers, digital or manual? We don't have any. Where are the pay/owe sheets, digital or manual? We don't have any." Addiego was "not in the business of selling," counsel maintained. "He's not a tradesman in the art of drug dealing or drug selling. He's in the art of possession of [a] controlled substance for him to use."

8

In rebuttal, the prosecutor responded to defense counsel's comment that no text messages were found on Addiego's phone. "It wasn't for lack of trying," the prosecutor said. A detective unsuccessfully tried two different software and hardware applications to access the data in Addiego's phone. "[T]hat probably wouldn't have been necessary had he had the PIN code to open that phone," the prosecutor argued. The detective "would have been able to unlock the phone without even needing" the special software and hardware. "And what we heard today is that the defendant didn't consent to that phone being searched."

The prosecutor then reminded the jury of the defense expert's testimony regarding cell phone searches: "[H]e testified . . . that when people don't consent to search a phone, they go and get a warrant. And they do that based on probable cause, because now they certainly believe that there is something illegal on that phone." Defense counsel objected that the prosecutor was misstating the evidence. "That's what he testified to," the trial court explained when overruling the objection. The prosecutor told the jury Addiego "took the stand and . . . said that he is a user" after "[h]e waited to hear all of the evidence in the case." Defense counsel objected the comment was "improper argument." The trial court agreed, "he couldn't testify before that."

At the end of his rebuttal argument, the prosecutor told the jury: "Hold me to my burden of proving the case beyond a reasonable doubt. Please do. We want that. . . . We don't convict people just because of how we feel or what is fair and unfair."

V

*Motion for Mistrial, Verdicts, and Sentencing*

After the trial court instructed the jury and outside of their presence, defense counsel made an oral motion for a mistrial because of the prosecutor's comment that Addiego waited to hear the evidence against him before testifying. The trial court denied the motion a few days later, finding that the comment was not improper under *People v. Miller* (1990) 50 Cal.3d 954, 996 and *Portuondo v. Agard* (2000) 529 U.S. 61.

9

The jury found Addiego guilty of transporting and possessing a controlled substance for the purposes of sale, and misdemeanor possession of drug paraphernalia. (Health & Saf. Code, §§ 11379, subd. (a), 11378, 11364, subd. (a).)  In September 2023, the trial court placed Addiego on formal probation for two years and he appealed.

## DISCUSSION

Addiego alleges prosecutorial misconduct on four distinct grounds: (1) cross-examination and argument to the jury regarding his refusal to consent to a cell phone search was impermissible comment on the exercise of a Fifth Amendment privilege against self-incrimination and thereby violated his due process rights; (2) cross-examination and argument was also impermissible comment on the exercise of his Fourth Amendment right against unreasonable searches; (3) the prosecutor shifted its burden of proof to the defense; and (4) argument to the jury on the timing of his testimony violated his right against self-incrimination and thereby violated his rights to due process and a fair trial.  In relation to the first and third claims, Addiego also argues that his trial counsel was ineffective by failing to raise those two specific claims with the trial court. The People contend all four claims are forfeited on appeal and lack merit, and that any possible error was harmless.

We conclude Addiego's first three claims are forfeited on appeal and the fourth claim lacks merit.

### I

*Background Principles of Prosecutorial Misconduct*
*and Ineffective Assistance of Counsel*

A defendant may not complain of prosecutorial misconduct on direct appeal absent both a timely objection to the misconduct in the trial court on the same grounds raised on appeal and a request that the jury be admonished to disregard the alleged misconduct.  If trial counsel did not object at trial to the alleged prosecutorial misconduct, a criminal defendant can argue on appeal, like Addiego does here in connection with two

10

of his four claims, that counsel's inaction violated the constitutional right to effective assistance of counsel. But the appellate record "rarely shows that the failure to object was the result of counsel's incompetence." (*People v. Lopez* (2008) 42 Cal.4th 960, 966.)

To demonstrate ineffective assistance of counsel, a criminal defendant must show that counsel's deficient performance prejudiced the defense. On direct appeal, a finding of deficient performance is warranted where (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. Where trial counsel's tactics or strategic reasons for challenged decisions do not appear on the record, the court must not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for the acts or omissions. (*People v. Johnsen* (2021) 10 Cal.5th 1116, 1165; see *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 267, 268 ["[a]n appellate court should not . . . brand a defense attorney incompetent unless it can be truly confident all the relevant facts have been developed"].)

II

*Cell Phone Fifth Amendment Claim*

Addiego contends the prosecutor's questioning of witnesses and rebuttal argument regarding his refusal to unlock his phone were impermissible comments on his exercise of a Fifth Amendment right not to incriminate himself as elucidated in *Doyle v. Ohio* (1976) 426 U.S. 610 and *Griffin v. California* (1965) 380 U.S. 609. We agree with the People that this claim is forfeited on appeal because it was not raised below and there could be a satisfactory explanation why trial counsel acted as he did.

A.    *Additional Background*

In a pretrial motion to admit evidence of statements that Addiego made to the deputy before his arrest, the People asserted that after an initial exchange in which Addiego insisted there was nothing illegal in his car and he did not use drugs, the deputy

11

"advised [Addiego] of his rights per *Miranda*,[2] and [Addiego] invoked." When the parties and the trial court later discussed this motion, defense counsel said he had no objection to the admission of Addiego's pre-arrest statements but asked that no reference be made to Addiego's invocation of his *Miranda* rights. The prosecutor responded that the tape he prepared and provided to defense counsel was edited from the original to cut off before the invocation of rights and was "only about a minute, minute and a half long. So we're really not even getting close to the point where we get to any sort of *Miranda* advisements being given to the defendant."

   B.    *Relevant Fifth Amendment Principles*

While the Fifth Amendment provides that no person may be compelled to incriminate themselves in a criminal case, this is not an unqualified right to remain silent. The Fifth Amendment is concerned with coercion by the government, such as in cases where a prosecutor "invites the jury to draw adverse inferences from a defendant's failure to take the witness stand. [Citation.] Although *Griffin* included a general statement that the Fifth Amendment 'forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt' (*Griffin v. California*, *supra*, 380 U.S. at p. 615), the court has since clarified that the 'broad dicta in *Griffin* . . . must be taken in the light of the facts of that case'—a prosecutor's comment on a defendant's right not to testify *at trial*." (*People v. Tom* (2014) 59 Cal.4th 1210, 1222-1223 (*Tom*).)

"[T]he Fifth Amendment privilege against self-incrimination does not categorically bar the prosecution from relying on a defendant's pretrial silence. The prosecution may use a defendant's pretrial silence as impeachment, provided the defendant has not yet been *Miranda*ized. (*Fletcher v. Weir* (1982) 455 U.S. 603

---

[2]  *Miranda v. Arizona* (1966) 384 U.S. 436.

[postarrest silence]; *Jenkins v. Anderson* (1980) 447 U.S. 231 . . . [prearrest silence]; cf. *Doyle* . . . [postarrest, post-*Miranda* silence is not admissible as impeachment].)  The prosecution may also use a defendant's prearrest silence in response to an officer's question as substantive evidence of guilt, provided the defendant has not expressly invoked the privilege." (*Tom*, *supra*, 59 Cal.4th at p. 1223.)

C.      *Analysis*

Here, Addiego argues there could be no possible tactical reason why trial counsel failed to raise a claim of prosecutorial misconduct relating to *Doyle* and *Griffin* error.  He argues this is so because any conversation he had with the deputy regarding his cell phone must have occurred after he invoked his *Miranda* rights.  In support of this ostensible factual certainty, Addiego invokes the above discussion of the prosecutor's pre-trial motion and the transcript of the audio recording of the traffic stop entered into evidence, neither of which referenced or contained any conversation regarding a cell phone.  We are not persuaded.

As the People observe, this contention has a gap in its logic.[3]  Consider a hypothetical five-minute conversation between a police officer and a driver who is read *Miranda* rights at the beginning of the fifth minute and thereafter invokes the right to remain silent.  If we know only what was said in the first minute and a half, it does not follow that any conversation occurred after invocation of the right to remain silent.  There are at least two and one-half minutes unaccounted for under that theory.  Likewise, here it is plausible the pertinent discussion about Addiego's cell phone occurred after the portion of his conversation with the deputy that was admitted into evidence but before Addiego was read his *Miranda* rights.  And that plausibility makes the ineffective assistance claim unpersuasive.  Perhaps trial counsel did not raise a claim of *Doyle* error because he knew

---

[3]  Addiego does not respond to this observation in his reply brief.

the cell phone conversation happened before Addiego was read and invoked his rights. (See *People v. Mendoza Tello*, *supra*, 15 Cal.4th at pp. 267-268; *Tom*, *supra*, 59 Cal.4th at p. 1223 [*Doyle* concerns postarrest, post-*Miranda* silence].)

As for the alleged *Griffin* error, trial counsel is not ineffective by failing to raise a meritless argument. Addiego testified at trial, so *Griffin* was not implicated. (*Tom*, *supra*, 59 Cal.4th at p. 1223 [*Griffin* concerns a "defendant's right not to testify *at trial*"].) Accordingly, this claim is forfeited on appeal because it was not raised below and there is a conceivable reason why trial counsel acted as he did.

## III

### *Fourth Amendment Claim*

Addiego contends the prosecutor's questioning and comments regarding his refusal to allow the deputy to search his phone improperly penalized him for exercising his Fourth Amendment rights. We agree with the People that this claim is forfeited on appeal because Addiego did not raise it below. Addiego neither contests the People's assertion that he failed to raise this specific claim of prosecutorial misconduct below nor offers any reason why we should consider it despite that failure. Accordingly, we will not consider this claim. (See *People v. Lopez*, *supra*, 42 Cal.4th at p. 966.)

## IV

### *Shifted-Burden-of-Proof Claim*

The due process clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." (*In re Winship* (1970) 397 U.S. 358, 364.)

Addiego contends the prosecutor improperly shifted the burden of proof onto the defense by (1) asking him if he would have agreed to show text messages on his phone to the deputy if the deputy had asked, (2) eliciting testimony from the digital forensics detective that data from Addiego's phone easily could have been extracted with the PIN

14

code, (3) eliciting testimony from the defense expert that someone suspected of drug dealing would not consent to a search of a cell phone that has incriminating evidence. He further contends trial counsel provided ineffective assistance by failing to raise this claim below.

We agree with the People that this claim is forfeited on appeal because it was not raised below and there could be a satisfactory explanation why trial counsel acted as he did.

A.    *Additional Legal Background*

There is a strong presumption that counsel's conduct falls within the wide range of reasonableness, and reviewing courts should not second-guess what may be difficult tactical decisions at trial, even if a tactical error can be gleaned under the " 'harsh light of hindsight.' " (*People v. Weaver* (2001) 26 Cal.4th 876, 925-926.) A decision whether to object to testimony is " 'highly tactical, and depends upon counsel's evaluation of the gravity of the problem *and whether objection or other responses would serve only to highlight the undesirable testimony*.' " (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1313.) Because trial counsel " 'is best able to determine proper tactics in the light of the jury's apparent reaction to the proceedings,' " competent counsel might "forgo even a valid objection." (*People v. Riel* (2000) 22 Cal.4th 1153, 1197.)

B.    *Analysis*

It is plausible trial counsel chose not to object to avoid highlighting the evidence on which that shift rested. Perhaps, in light of the jury's reaction to the proceedings, counsel believed the trial court's jury instructions and his closing argument would cure a suggestion by the prosecutor that Addiego had an evidentiary burden. Perhaps trial counsel wanted to emphasize what he hoped would appear to be an overall weak case by the prosecution and inadequate investigation by law enforcement. As the cases immediately above explain, such tactical decisions do not amount to ineffective assistance of counsel.

15

It is worth noting that counsel objected when the prosecutor said in rebuttal argument that the defense expert "testified . . . that when people don't consent to search a phone, they go and get a warrant. And they do that based on probable cause, because now they certainly believe that there is something illegal on that phone." Counsel objected the prosecutor was misstating the evidence. The trial court correctly overruled the objection, as the prosecutor indeed was faithfully paraphrasing the defense expert's testimony.[4]

V

*Testimonial Fifth Amendment Claim*

Addiego contends the prosecutor violated his right against self-incrimination when commenting in rebuttal argument to the jury that he "took the stand and . . . said that he is a user" after "[h]e waited to hear all of the evidence in the case." He contends this comment violated his rights under *Doyle* and *Griffin* as it impermissibly asked the jury to disbelieve his testimony because he did mention his drug use to the deputy when arrested. We are not persuaded.

The prosecutor did not invite the jury to penalize Addiego for postarrest silence. He invited the jury to consider that Addiego was able to hear the prosecution's evidence during the trial and then tailor his testimony accordingly. We agree with the People this was fair argument under *Portuondo v. Agard*, *supra*, 529 U.S. 61, wherein the United

---

[4] Two observations are worth noting. First, in the context of claims of prosecutorial misconduct in shifting the burden of proof, there is an important distinction " 'between . . . permissible comment' " by a prosecutor " 'that a defendant has not produced any evidence' " on the one hand and " 'improper statement that a *defendant has a duty or burden to produce evidence*, or a duty or burden to prove his or her innocence' " on the other hand. (*People v. Steskal* (2021) 11 Cal.5th 332, 352, italics added.) Second, in closing, argument the prosecutor asked the jury to "hold [him] to [his] burden . . . to prove each element beyond a reasonable doubt." Similarly, he told the jury in rebuttal to "[h]old [him] to [his] burden of proving the case beyond a reasonable doubt."

16

States Supreme Court ruled it is appropriate to treat a criminal defendant the same as any other witness who has an opportunity to tailor testimony after hearing other witnesses testify first.[5]  (*Id.* at p. 73.)

DISPOSITION

The judgment is affirmed.

/s/
_____
BOULWARE EURIE, J.

We concur:

/s/
_____
DUARTE, Acting P. J.

/s/
_____
MESIWALA, J.

_____

[5]  We note Addiego does not discuss *Portuondo v. Agard* in his briefing.  And we disagree with the People that this claim is forfeited on appeal because trial counsel objected to the comment only as "improper argument" and not specifically on grounds of prosecutorial misconduct.  The objection and related motion for mistrial preserved the claim.  (See *People v. Hubbard* (2020) 52 Cal.App.5th 555, 563 [disagreeing with the People's contention that the defendant forfeited an argument "by not objecting on the basis of a federal constitutional error," where the defendant argued the prosecutor "had made 'an improper argument' by highlighting that he did not testify and implying that he should have testified to support his trial counsel's version of the events"].)